Uber Tech., Inc. v American Arbitration Assn., Inc. (2022 NY Slip Op 02503)

Uber Tech., Inc. v American Arbitration Assn., Inc.

2022 NY Slip Op 02503

Decided on April 14, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: April 14, 2022

Before: Acosta, P.J., Kern, González, Shulman, JJ. 

Index No. 655549/21 Appeal No. 15732 Case No. 2021-03782 

[*1]Uber Technologies, Inc., et al., Plaintiffs-Appellants,
v
American Arbitration Association, Inc., Defendant-Respondent.

Kaplan Hecker & Fink LLP, New York (Roberta A. Kaplan of counsel), for appellants.
Schnader Harrison Segal & Lewis LLP, New York (Theodore L. Hecht of counsel), for respondent.

Order, Supreme Court, New York County (Robert R. Reed, J.), entered October 15, 2021, which denied plaintiffs' motion for preliminary injunctive relief, unanimously affirmed, without costs.
This is a contract dispute between plaintiffs Uber Technologies, Inc. and Uber USA, LLC (together, Uber) and defendant the American Arbitration Association, Inc. (AAA) over fees for approximately 31,500 similarly situated arbitrations. Uber's platform, "Uber Eats," allows customers to order takeout from various restaurants and have it delivered by a driver for a restaurant-specific delivery fee. In order to use the service, customers are required to agree to Uber's Terms of Use, which contains a provision stating that any dispute between the customer and Uber would be settled by binding arbitration administered by the AAA in accordance with AAA's rules, the Consumer Arbitration Rules (CA Rules). Following the death of George Floyd in June 2020, Uber announced it would waive its delivery fee charged to customers for orders placed at certain qualifying Black-owned restaurants from June 4, 2020 through December 1, 2020. Shortly after, the law firm of Consovoy McCarthy PLLC began searching for Uber Eats customers who paid a delivery fee to a nonblack owned restaurant during the relevant time and asking them to challenge the lawfulness of Uber's policy by claiming it constituted unlawful reverse race discrimination. From October 26, 2020 to December 9, 2020, the Consovoy Firm filed over 31,000 substantively identical arbitration demands with AAA on behalf of the Uber Eats customers against Uber.
In December 2020, AAA accepted and agreed to administer the claims according to the CA Rules, which included a fee schedule for individual cases. According to the fee schedule, for each case, Uber would owe AAA a $500 filing fee, a $1,400 standard case management fee, and a $1,500 arbitrator fee, for a total of approximately $107 million if charged the full amount under the fee schedule. AAA exercised its discretion as to the filing fee, and reduced it to approximately $4.3 million, which Uber paid without objection.
The parties and AAA then engaged in months of fruitless negotiations to come up with a more efficient process for dealing with the 31,500 arbitration cases. Finally, in April 2021, AAA told the parties that absent an agreement between them, it would administer the cases pursuant to the CA Rules, including invoicing fees according to the fee schedule. In doing so, AAA was committing to invoice Uber a minimum of approximately $91.6 million. AAA then broke the claims down into five different batches, with the first batch containing 477 non-California cases, and the remaining batches each containing approximately 7,771 California cases. AAA requested payment of the case management fee for the first batch for a total of $667,800 by April 30, 2021. Uber stated it would pay that amount, but "under protest." AAA responded by stating if payment was made under protest[*2], it would return such fees and administratively close the case files. AAA also invoked California Code of Civil Procedure §§ 1281.97 to 1281.99 (the Cal CP Arbitration Rule). The Cal CP Arbitration Rule provides that a drafting party that fails to pay arbitral administration fees or costs under the arbitration administrator's rules within 30 days of the "due date" is deemed to be "in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration." Moreover, the arbitrator may impose severe sanctions on the breaching party, including entry of a default judgment, prohibiting discovery, monetary sanctions, and orders of contempt. On May 13, 2021, Uber paid the $667,800 in case management fees for the first 477 cases.
On September 14, 2021, AAA issued an invoice demanding payment of $10.879 million for case management fees for the second "batch" of 7,771 cases subject to the Cal CP Arbitration Rule. Uber then filed this complaint against AAA alleging that its invoicing was unlawful. Uber asserted declaratory judgment claims based upon breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment and restitution, and unfair competition in violation of California's Unfair Competition Law (Cal Bus & Prof Code § 17200 et seq.). Simultaneously, Uber moved for a preliminary injunction to preserve the status quo by enjoining AAA from issuing any additional invoices, prohibiting AAA from closing any open arbitrations due to Uber's refusal to pay AAA's invoice, and extending the invoicing deadline in the event Uber's claims cannot be adjudicated before then.
Supreme Court providently exercised its discretion in denying Uber's motion for a preliminary injunction. In seeking a preliminary injunction, Uber had to "demonstrate, by clear and convincing evidence, (1) a likelihood of success on the merits, (2) irreparable injury absent the granting of the preliminary injunction, and (3) a balancing of the equities in the movant's favor" (Gilliland v Acquafredda Enters., LLC, 92 AD3d 19, 24-25 [1st Dept 2011]; see CPLR 6301).
Uber failed to establish a likelihood of success on the merits for any of its claims. Uber failed to demonstrate AAA breached any agreed upon terms by failing to charge fees commensurate with its reasonable, actual costs. While Uber alleges that it, the claimants, and AAA are all bound by the CA Rules and Consumer Due Process Protocol Statement of Principles (Protocol), neither of those documents requires AAA to charge reasonable fees related to its actual costs. Rather, the CA Rules repeatedly state AAA will charge fees as outlined in the attached fee schedule. The CA Rules also allow AAA to exercise sole discretion as to whether to apply the CA Rules, whether to interpret and apply the fee schedule to a particular case or cases, and whether to consider an alternative payment process for multiple case filings. The Protocol, while not explicitly [*3]mentioned in Uber's Terms of Use, has language regarding reasonableness of fees, but the sections referenced by Uber primarily deal with ensuring consumers receive due process and the impartiality of the arbitrators. Thus, it is unlikely Uber would succeed on its declaratory judgment breach of contract claim.
Uber has not shown a likelihood of success on the merits of its breach of implied covenant claim, as AAA was fully within its express rights under the CA Rules to charge the fees set forth in the fee schedule (see Carma Devs. [Cal.], Inc. v Marathon Dev. Cal., Inc., 2 Cal 4th 342, 374 [1992]), and while it chose not to exercise its discretion and reduce the fees after the parties could not agree to a more efficient manner of proceeding with over 31,000 arbitrations, there is no evidence AAA acted with dishonesty, deceit, or unfaithfulness to duty (Storek & Storek, Inc. v Citicorp Real Estate, Inc., 100 Cal App 4th 44, 59 [2002]). As for the unjust enrichment claim, under California law, it is not a separate cause of action, and Uber has not shown likelihood of success on another cause of action warranting restitution (see McBride v Boughton, 123 Cal App 4th 379, 387 [2004]).
Uber failed to establish likelihood of success on its claim under California Unfair Competition Law, which provides that "unfair competition shall mean and include any unlawful [or] unfair . . . business act or practice" (Cal Bus & Prof Code § 17200). Contrary to Uber's allegations, this claim is unlikely to succeed under the unlawful prong, as Uber has not shown a likelihood of success on the underlying breach of the implied covenant claim. It is also unlikely to succeed under the unfair prong, as AAA's enforcement of its fee schedule does not offend public policy, and is not immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers (People v Casa Blanca Convalescent Homes, 159 Cal App 3d 509, 530 [1984]). Because Supreme Court did not abuse its discretion in finding that Uber failed to establish a likelihood of success on the merits on any claim, this Court need not reach the issue of arbitral immunity under California law.
Supreme Court providently found a lack of irreparable harm. Uber solely seeks declaratory judgments for the four claims in its complaint. However, Uber may not seek a declaratory judgment when other remedies are available, such as monetary damages (see Atlas MF Mezzanine Borrower, LLC v Macquarie Tex. Loan Holder LLC, 174 AD3d 150, 163 [1st Dept 2019]), and here, monetary damages are available for all four of Uber's claims. Uber is effectively seeking a substantial reduction to the additional $91 million AAA will invoice to arbitrate the claims, which would be a monetary judgment precluding the preliminary injunction (see Credit Agricole Indosuez v Rossiyskiy Kredit Bank, 94 NY2d 541, 545, 548 [2000]; JSC VTB Bank v Mavlyanov, 154 AD3d 560, 561 [1st Dept 2017]). In addition, Uber has asserted counterclaims against its [*4]arbitration counterparties seeking reimbursement of the fees at issue, thus cutting against its claim of irreparable harm. Further, Uber could avoid the alleged irreparable harm caused by AAA by changing the assigned arbitration organization for the 31,000 cases.
The balance of the equities weighs in favor of AAA. While Uber is trying to avoid paying the arbitration fees associated with 31,000 nearly identical cases, it made the business decision to preclude class, collective, or representative claims in its arbitration agreement with its consumers, and AAA's fees are directly attributable to that decision (see Avenue A Assoc. LP v Board of Mgrs. of the Hearth House Condominium, 190 AD3d 473, 474 [1st Dept 2021]).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: April 14, 2022